**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **BETTIE SCOTT,** § | |
| Plaintiff, § | |
| v. § | No. **3:11-CV-0152-BF** |
| § | |
| **COMMISSIONER OF THE** § | |
| **SOCIAL SECURITY ADMINISTRATION,** § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

This is an appeal from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying the claim of Bettie Scott ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. The Court considered Plaintiff's Brief, Defendant's Brief, and Plaintiff's Reply Brief and reviewed the record in connection with the pleadings. The final decision of the Commissioner is reversed and remanded for further consideration.

## Background[1]

## Procedural History

On February 7, 2008, Plaintiff filed applications for Title II and Title XVI benefits, alleging a disability onset date of February 4, 2008, due to congestive heart failure and depression. (Tr. 136-147, 178.) Her claims were denied initially, and again upon reconsideration. (Tr. 62, 68, 79, 83.) Plaintiff then requested a hearing by an Administrative Law Judge ("ALJ"). (Tr. 87.) On April 7, 2009, ALJ Gilbert Rodriguez held a hearing in Dallas, Texas. Plaintiff, represented by an attorney, appeared and testified. (Tr. 24-55.) On June 15, 2009, the ALJ issued an unfavorable decision.

---

[1] The following background facts are taken from the transcript of the administrative proceedings, which is designated as "Tr."

Plaintiff timely requested review by the Appeals Council on July 16, 2009. (Tr. 8.) This request was denied on December 7, 2010. (Tr. 1.) Plaintiff then sought judicial review of the decision under 42 U.S.C. § 405(g).

### Plaintiff's Age, Education, and Work Experience

On the date of her alleged onset of disability, Plaintiff was fifty-five years old. (Tr. 9-23, 138.) She has been a "person of advanced age" under the regulations at all times relevant to this action. *See* 20 C.F.R. § 404.1563(3). Plaintiff has a high school education and past relevant work as a tax preparer, operator, travel agency supervisor, and receptionist. (Tr. 29, 180.)

### Plaintiff's Medical Evidence

Plaintiff has a medical history of congestive heart failure, hypertension, cardiomyopathy, bronchitis, depression, syncope, and bipolar disorder. (Tr. 285, 484, 598, 691.) *See* 20 C.F.R. § 404.1563(e). Although her date of onset began in February 2008, Plaintiff attempted to work part time until September 2008. (Tr. 43-44.) Plaintiff was ultimately laid off by her employer because she had blacked out at work and her illness was causing her to be absent from work. (*Id.*)

Plaintiff's medical records begin with the year 2005. At that time, views of her chest demonstrated calcified granuloma in the right middle lobe and pleural thickening in the right apex. (Tr. 585.) In May 2007, it was noted that Plaintiff was diagnosed with congestive heart failure three years before and was further diagnosed with chronic obstructive pulmonary disease, unspecified essential hypertension, and unspecified secondary cardiomyopathy. (Tr. 285, 434.) By August, Plaintiff had been experiencing shortness of breath for the past month with a dry cough, and had experienced swelling in her legs. (Tr. 236.) She had stopped taking her medications because she

2

thought she was cured. (*Id*.) An echocardiogram showed ejection fraction of 16 percent, with severe cardiomyopathy. (*Id.*)

An October 2007 report noted congestive heart failure, unspecified essential hypertension, chronic airway obstruction, and venous thrombosis and embolism. (Tr. 282.) From December 2007 through 2009, Plaintiff consistently had extraordinarily high coagulation readings. (Tr. 432, 440, 442, 445, 452, 458, 463, 467, 625, 633, 654, 685, 693.) In January 2008, Plaintiff was diagnosed with mitral valve disorder, diseases of the tricuspid valve, congestive heart failure, and unspecified essential hypertension. (Tr. 270.) By February, Plaintiff was noted as having calcified granuloma in her right middle lobe, bilateral apical pleural thickening, and some artifacts over the left apex. (Tr. 261.) Radiology reports showed osteopenia and borderline cardiomegaly. (*Id.*) Plaintiff further had an abnormal ECG and an EKG revealed left bundle branch block. (Tr. 552.) Also noted was biapical pleural thickening. (Tr. 268.)

In March, Plaintiff's disease process was described as heart failure. (Tr. 269.) In April, Plaintiff reported symptoms including an increasingly depressed mood, sleep disturbance, decreased concentration and energy level, and increased guilt and anxiety. (Tr. 484.) Plaintiff's assessment was depression NOS. (Tr. 485.) In May 2008, Plaintiff was noted as continually fatigued with pain in her extremities and in her head. (Tr. 344-45.) Further, Plaintiff was noted as having some working memory deficiency. (Tr. 347.) In fact, she was unable to mentally add 23 and 32. (*Id.*) At Axis I, Plaintiff was found to be suffering from recurrent, major depressive disorder. (Tr. 348.) At Axis III, Plaintiff was found to have congestive heart failure, hypertension, and chronic bronchitis. (*Id.*) In May, Plaintiff had an ejection fraction of as low as 17 percent, with continuing fatigue, shortness of

3

breath, and frequent dizziness. (Tr. 351-52.) Plaintiff also had left ventricle systolic function with ejection fraction at 52 percent, mild tricuspid regurgitation, and mild mitral regurgitation. (Tr. 574.)

In June, Plaintiff was diagnosed with primary cardiomyopathies, unspecified essential hypertension, and automatic implantable cardiac defibrillator in situ. (Tr. 559.) Plaintiff further reported episodes of blacking out, dizziness, and an inability to recall what she had read. (Tr. 382.)

A residual functional capacity ("RFC") was completed by John Ferguson, Ph.D., a state medical consultant, who assessed Plaintiff's limitations under Listing 12.04 Affective Disorders. (Tr. 359.) Specifically, he determined that Plaintiff was mildly restricted in her activities of daily living and in maintaining social functioning. (Tr. 369.) He further found a moderate degree of limitation for Plaintiff's ability to maintain concentration, persistence, or pace. (*Id.*) Dr. Ferguson also opined that Plaintiff has moderate limitations in her ability to understand, to remember, and to carry out detailed instruction; to maintain attention and concentration for extended periods; and in her ability to complete a normal workday and workweek. (Tr. 373-74.) An RFC was also completed by Patty Rowley, M.D., in July 2008. (Tr. 500.) Dr. Rowley opined that Plaintiff was able to lift 20 pounds occasionally, 10 pounds frequently, stand about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, and push and/or pull an unlimited amount. (Tr. 501.)

Throughout August, September, and October of 2008, Plaintiff continued to have high coagulation readings. She was diagnosed with chronic obstructive pulmonary disease, syncope, congestive heart failure, hypertension, and depression. (Tr. 439, 544, 592, 598, 625, 629-30, 633.) In October 2008, Plaintiff's treating physician completed an RFC. (Tr. 592-595.) Based on the treatment history, it was determined that Plaintiff's emotional factors contributed to the severity of her limitations and that she would frequently experience cardiac symptoms severe enough to interfere

4

with the attention and concentration needed to perform even simple tasks. (Tr. 593.) It was further opined that Plaintiff could sit or stand/walk for less than two hours in an eight-hour working day, and would require a job that permits shifting positions at will from sitting, standing, or walking. (Tr. 594.) It was also determined that Plaintiff needed to take unscheduled breaks during an eight-hour workday. (*Id.*)

By November, test results showed right atrial enlargement, nonspecific intraventricular block, inferior infarct, and an abnormal ECG. (Tr. 618.) Also, in November, Plaintiff was found wandering on Interstate 30 at one o'clock in the morning. (Tr. 47, 691.) She was subsequently diagnosed with bipolar disorder. (*Id.*) By January 2009, Plaintiff's mental health continued to deteriorate. She was reporting significant depression, was paranoid that her family was talking about her, was irritable and fighting with people, had racing thoughts, mood swings, and thoughts of suicide. (Tr. 676.) Additionally, Plaintiff also had an acute fracture involving the shaft of her middle finger. (Tr. 661.)

In March 2009, Sondra Rolater, RN, FNP, supervised by Jose Joglar, MD, completed a Cardiac Residual Functional Capacity Questionnaire. (Tr. 695-98.) The RFC showed a diagnosis of congestive heart failure with biventricular internal cardiac defibrillator, with a prognosis of "fair." (Tr. 695.) Plaintiff was found to have marked limitations which rendered her incapable of working even "low stress" jobs. (Tr. 696.) It was also determined that she could sit for about two hours in an eight-hour workday and could stand/walk for less than two hours in an eight-hour workday. (Tr. 697.) Plaintiff would require a job that permits shifting positions at will from sitting, standing, or walking and would allow her to take unscheduled breaks during an eight-hour working day. (*Id.*) It was opined that Plaintiff could occasionally lift 10 pounds, rarely lift 20 pounds, and never lift 50 pounds. (*Id.*) Further, Plaintiff could only occasionally twist, rarely stoop, crouch/squat, climb stairs,

5

and never climb ladders. (*Id.*) The Questionnaire indicated that Plaintiff would likely miss about two days per month because of her impairments. (Tr. 698.)

### **Plaintiff's Testimony at the Hearing**

Plaintiff testified that her alleged onset date was February 4, 2008, when she was 55 years old. (Tr. 29.) She said that she had congestive heart failure and had a defibrillator implanted on that date. (Tr. 31.) The defibrillator, along with medication regulated her heart. Plaintiff said that she continued to work part time as a shoe store manager until September 11, 2008. (Tr. 30.) However, according to Plaintiff, she tired quickly and did not have the energy to keep working. (Tr. 34.) She testified that she is 5'4" and weighs 110 pounds. (*Id.*) She said she has been separated from her husband for ten years and has adult children, one of whom lives with her. (Tr. 35.) She receives food stamps and unemployment. (Tr. 36.) She lives in a one bedroom apartment which is on the 1st floor of the apartment building. (Tr. 37.) She has no car; she does not drive; and she does not ride buses. (*Id.*) Her friends provide her transportation. (Tr. 38.) She attends Sunday School and Church regularly. (Tr. 38.) She buys groceries about once a month. (Tr. 39.) She has no pets, no garden, does not attend movies, sporting events, or other outside entertainment, does not belong to any groups or clubs, and does not take any trips. (Tr. 39-41.) She watches TV, does crosswords, and reads books, such as the Reader's Digest. (*Id.*) Her eleven-year-old grandson used to come to see her, but due to her health, she has not been able to do anything with him lately. (Tr. 41-42.) She claims she has shortness of breath and bronchitis all of the time. (Tr. 43.) She testified she doesn't cook much, except to use the microwave and put things in the oven. (Tr. 45.) She sees a psychologist or psychiatrist every two months for depression and because she is bipolar. (Tr. 46.) Plaintiff testified that she has trouble concentrating and forgets what she is supposed to be doing.

6

(Tr. 48.) Her son reminds her to take her medications, and she also leaves little notes to remind herself. (Tr. 48.) She testified that she has trouble sleeping, often awaking in the night and being unable to return to sleep. (*Id.*)

Plaintiff said that she had worked since she was seventeen years old. (Tr. 49.) She stated she has no trouble sitting because "she can sit and just be like a doorknob." (*Id.*) She claimed to have trouble standing and walking because she has problems with her legs. (Tr. 50.) However, upon questioning by the ALJ, Plaintiff testified that she believed she could walk the length of a football field, but she would probably be out of breath before she got to the end. (*Id.*) She said she is unable to climb a flight of stairs or pick something up off the floor without becoming dizzy. (Tr. 51.) She testified that the unemployment commission has not referred her to any jobs but has extended her unemployment for two more months. (Tr. 54.)

## The ALJ's Decision

In his June 15, 2009, decision, the ALJ analyzed Plaintiff's claim pursuant to the familiar five-step sequential evaluation process.[2] At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, although she had worked as a shoe store supervisor for 20 hours per week during the relevant time period, earning $10.00 per hour. (Tr. 14, Finding No. 2.) At step two, the ALJ found that Plaintiff had severe impairments of a cardiovascular disorder and an affective disorder. (Tr. 14, Finding No. 3.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or

---

[2](1) Is the claimant currently working? (2) Does she have a severe impairment? (3) Does the impairment meet or equal an impairment listed in Appendix 1? (4) Does the impairment prevent her from performing her past relevant work? (5) Does the impairment prevent her from doing any other work? 20 C.F.R. §§ 404.1520, 416.920.

7

medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14-19, Finding No. 4.) Next, the ALJ determined that Plaintiff retained the RFC to perform a limited range of light work. (Tr. 19-22, Finding No. 5.) The ALJ also found that Plaintiff's subjective complaints were not entirely credible. (Tr. 20-22.) At step four, the ALJ determined that Plaintiff was able to perform her past relevant work as a tax preparer. (Tr. 22, Finding No. 6.) Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act at any time from February 4, 2008, her alleged onset date, through June 15, 2009, the date of the decision. (Tr. 22, Finding No. 7.)

## **Standard of Review**

To be entitled to social security benefits, a plaintiff must prove that she is disabled for purposes of the Social Security Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

    4.    If an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" must be made.

    5.    If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove her disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

    The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C.A. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. However, "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

Moreover, the terms of 20 C.F.R. § 404.1527 define "medical opinions" and instruct claimants how the Commissioner will consider the opinions.[3] In the Fifth Circuit, "the opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton*, 209 F.3d at 455; *see Floyd v. Bowen,* 833 F.2d 529, 531 (5th Cir.1987).

### Issues

1. Whether the ALJ committed legal error by failing to use the required severity standard set out in *Stone v. Heckler*.

2. Whether the ALJ failed to give proper weight to treating and examining medical opinions which led to a decision which is unsupported by substantial evidence.

3. Whether the ALJ's credibility findings are unsupported by substantial evidence.

4. Whether the ALJ's step four finding that Plaintiff could perform her past relevant work on a regular and continuing basis is unsupported by substantial evidence.

### Analysis

### Application of Incorrect Legal Standard

Plaintiff contends that the ALJ failed to cite and to apply the severity standard set forth in *Stone v. Heckler*, 752 F.2d 1099, 1104-05 (5th Cir. 1985) to Plaintiff's pulmonary disorder and to her syncope. (Pl.'s Br. at 8, citing Tr. 236, 283-84, 433, 607, 629 and 545, 598, 629.) Plaintiff

---

[3] The terms of 20 C.F.R. § 404.1527(a)(2) provide:

> (2) Evidence that you submit or that we obtain may contain medical opinions. Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

further contends that both Plaintiff's lung disorder and her syncope were severe impairments during the insured period. (*Id.*) Unless the correct severity standard was applied, the case must be remanded to the Commissioner for reconsideration. *Stone*, 752 F.2d at 1006.

Plaintiff contends that the ALJ applied the regulatory definition when determining which of Plaintiff's impairments were "severe." The ALJ cited the regulatory definitions at 20 CFR 404.1520(c) and 20 CFR § 404.1521 and its corollary SSRs in setting out the standard he would apply at step two of the sequential process. He stated:

> At step two, I must determine whether [Plaintiff] has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." An impairment or a combination of impairments is "severe" within the meaning of the regulations if it significantly limits an her ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.

(Tr. 13.) In *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986), while acknowledging that *Stone* does not require wholesale remand of all severity cases, the Fifth Circuit reaffirmed that the ALJ may not rely solely on the language of the present regulation and must set forth the correct standard by reference to Fifth Circuit opinions or by an express statement that the Fifth Circuit's construction of the regulation has been applied. *Id*.

The ALJ's decision at step two was as follows: "[t]he claimant has the following severe impairments; cardiovascular disorder and an affective disorder," citing 20 CFR 404.1520(c) and 416.920(c). The Commissioner argues that the severity standard set forth by the ALJ in his decision is the same standard set forth in SSR 85-28 that was issued by the Social Security Administration to clarify its policy to be consistent with court decisions, including *Stone*.

11

An ALJ's referral to applicable social security regulations and rulings, including 20 C.F.R. § 416.920(c), 20 C.F.R. § 416.921, SSR 85–28, SSR 96–3p, and SSR 96–4p, does not substitute as a proper construction of the *Stone* standard. *See, e.g. Brown v. Astrue*, No. 3–11–CV–0475–BD, 2012 WL 652034 at *3 (Feb. 29, 2012); *Lederman v. Astrue*, No. 3–10–CV–1987–M–BK, 2011 WL 5346268 at *7 (N.D.Tex. Nov. 3, 2011); *Jones v. Astrue,* No. 3–11–CV–0107–BK, 2011 WL 4498872 at *7 (N.D.Tex. Sept.28, 2011); *Garcia v. Astrue,* No. 3–08–CV–1881–BD, 2010 WL 304241 at *3 (N.D.Tex. Jan.26, 2010). The "minimal effect on an individual's ability to work" definition that the ALJ used in this case is not the standard set forth in *Stone*. In the Fifth Circuit, the appropriate legal standard for determining whether a claimant's impairment is severe is *de minimus*:

> [A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

*Stone,* 752 F.2d at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984) and citing *Davis v. Heckler*, 748 F.2d 293, 296 (5th Cir. 1984); *Martin v. Heckler*, 748 F.2d 1027, 1032 (5th Cir. 1984)). *See Loza* v. Apfel, 219 F.3d 378, 391 (5th Cir. 2000). The ALJ neither referred to the correct standard by reference to Fifth Circuit opinions nor made an express statement that the Fifth Circuit's construction of the regulation had been applied.

Unlike the standard that the ALJ applied, *Stone* provides no allowance for minimal interference on a claimant's ability to work. Although this court has recognized that the difference between the two statements may appear to be slight, the ALJ's construction is not an express statement of the *Stone* standard. The United States District Court for the Northern District of Texas is consistent in its refusal to find that the standard which the ALJ applied in this case is the standard set forth in *Stone*. *See Sanders v. Astrue*, No. 3:07–CV–1827–G (BH), 2008 WL 4211146 at *7

(N.D. Tex. Sept. 12, 2008); *Scroggins v. Astrue*, 3:08–CV–1444–L (BH), 2009 WL 192875, at *5 (N.D. Tex. Dec. 23, 2008), *rec. accepted*, 598 F. Supp.2d 800, 806-07 (N.D.Tex. Jan. 27, 2009).

The Commissioner contends that even if the ALJ applied an incorrect severity standard, remand is not proper here because the ALJ proceeded to step four of the sequential evaluation process. In other words, the Commissioner would treat the error as a procedural error where remand is not required unless a claimant demonstrates prejudice. As the Court correctly points out in *Brown*, at *4, courts in this circuit have no discretion to determine whether such an error is harmless. *See Scroggins,* 598 F.Supp.2d at 806–07. "Unless the correct standard is used, the claim *must* be remanded to the Secretary for reconsideration." *Stone,* 752 F.2d at 1106 (emphasis added); *see also Varela v. Astrue,* No. 4–11–CV–0232–Y, 2012 WL 473761 at * 5 n. 2 ( N.D.Tex. Jan. 4, 2012), *rec. adopted*, 2012 WL 473918 (N.D.Tex. Feb.14, 2012) (collecting Northern District cases holding that failure to apply *Stone* standard is legal error requiring reversal); *Adcock v. Astrue,* No. 3–10–CV–2257–BD, 2011 WL 5529555 at *4 (N.D.Tex. Nov.14, 2011) (remand required where the ALJ cited to *Stone,* but nonetheless applied incorrect standard); *Neal v. Comm'r of Soc. Sec. Admin.,* No. 3–09–CV–0522–N, 2009 WL 3856662 at *1 (N.D.Tex. Nov.16, 2009) (ambiguity as to whether proper legal standard was used in making severity determination must be resolved at the administrative level).

The difference between the *Stone* standard and that applied by the ALJ, coupled with the ALJ's failure to cite *Stone* or a similar opinion, or to expressly mention the Fifth Circuit's interpretation of the regulation, constitutes the ALJ's application of an incorrect legal standard and requires reversal and remand for legal, rather than procedural, error. *Sanders*, 2008 WL 4211146,

13

at *7; *Scroggins*, 2009 WL 192875, at *5. *See Rangel v. Astrue*, 605 F. Supp. 840, 851 (W.D. Tex. 2009).

The Court recognizes that some courts have held that if the ALJ assessed the effects of Plaintiff's non-severe impairments in determining the claimant's RFC, the Court must assume that the ALJ found those impairments to be severe, and in those cases, there is no ground for reversal. *See Jones*, 2011 WL 4498872 at *7.[4] The rationale is that the district court properly can draw this inference where the ALJ considers the impairments in question at later stages of the five-step sequential analysis because those stages are premised on a finding, at the second step of the analysis, that the impairments were severe. *Id*; *see Reyes,* 915 F.2d at 154 & n. 1. However, this is to be distinguished from the situation wherein the ALJ commits a *Stone* error by applying an incorrect severity standard, explicitly rejects one or more of the claimant's impairments as non-severe based on that error, and proceeds to the later steps of the sequential analysis only with respect to other claimed impairments. *See Loza*, 219 F.3d at 399.

Plaintiff's impairments that the ALJ did not find severe were her lung impairment and her

---

[4] Some decisions have held that proceeding beyond step two of the analysis renders a *Stone* error unimportant or irrelevant. *See, e.g., Musial v. Astrue,* No. 4:10–CV–280–A, 2011 WL 5346307, at*3–5 (N.D. Tex. Nov 3, 2011) (McBryde, J.)(when ALJ went beyond step two and reached his decision at a later step, fact that the ALJ did not make specific reference to, or might have failed to properly apply, the *Stone* standard is unimportant); *Noble v. Astrue,* 4:09–CV–545–A, 2011 WL 2330972, at *3, 6–7 (N.D.Tex. June 14, 2011) (McBryde, J.) (same); *Blessing–Martinez v. Astrue,* 4:09–CV–535–A, 2011 WL 1297550, at *2 (N.D.Tex. Apr.5, 2011) (McBryde, J.) (when ALJ went beyond step two, ALJ's determination rested on an inquiry largely unaffected by the test set forth in *Stone*, rendering that argument irrelevant to disposition of plaintiff's case); *Stone v. Astrue,* 4:08–CV–598–A, 2010 WL 2164414, at *l–3 (N.D.Tex. May 27, 2010) (McBryde, J.) (ALJ properly considered the plaintiff's obesity in his analysis or in reaching his ultimate decision even though he did not apply *Stone* standard at step two).

syncope. Without the assistance of a medical expert or a vocational expert, the ALJ concluded that a test of Plaintiff's pulmonary functioning did not show that she had a lung impairment that prevented her from doing light work activities. (Tr. 16.) Thus, under *Jones*, the Court could assume that the ALJ found Petitioner's lung condition to be severe under *Stone*. However, the same is not true for Plaintiff's syncope. Plaintiff contended her syncope caused the loss of her part time managerial position because she blacked out at work. (Tr. 44.) Her medical records reflect she has been diagnosed with syncope which has caused loss of consciousness. (Southeast Dallas Health Center, Ex. 9F, 6/16/08, has episodes of blacking out and dizziness; Parkland, Ex. 13F, 7/13/08, diagnosis is syncope and collapse, unspecified essential hypertension, and old myocardial infarction; Parkland, Ex. 19F, 10/22/08, assessment is syncope and depression). Nevertheless, the ALJ's decision does not even mention Plaintiff's syncope. Accordingly, the Court cannot infer that the ALJ found Plaintiff's syncope to be severe or that he considered it in his analysis of her impairments. This case is distinguishable from those cases in which although a *Stone* error occurred, the ALJ assessed the effects of all of a claimant's severe and non-severe impairments at a later stage of the decision. *See Loza*, 219 F.3d at 399. Reversal is required so that the ALJ can apply the correct standard in determining the severity of all of Plaintiff's impairments under *Stone*.

## **Conclusion**

The Commissioner's decision is reversed and remanded for further consideration beginning at step two of the sequential analysis. The Court will not consider Plaintiff's remaining issues for review because remand is required at step two. However, upon remand, the Commissioner should

15

take note of all of the issues and ensure that he properly considers such issues after determining Plaintiff's severe impairments under *Stone*.

      Signed, March 29, 2012.

                                             _____
                                             PAUL D. STICKNEY
                                             UNITED STATES MAGISTRATE JUDGE